[No. 30954. Department Two. June 23, 1949.]

THE STATE OF WASHINGTON, *on the Relation of the City of Seattle et al., Appellants,* v. THE DEPARTMENT OF PUBLIC UTILITIES *et al., Respondents.*[1]

[1]Reported in 207 P. (2d) 712.

*A. C. Van Soelen, J. Ambler Newton, Glen E. Wilson, G. M. Ferris, Lane Morthland, Joseph T. Pemberton,* and *Clarence M. Boyle,* for appellant cities.

*The Attorney General, Frederick J. Lordan* and *George R. LaBissoniere, Assistants,* for respondent department of public utilities.

*John N. Rupp* (of *McMicken, Rupp & Schweppe*), for respondent Pacific Telephone and Telegraph Company.

SIMPSON, J.—We have for consideration an appeal involving a judgment entered as a result of our decision in the case of *State ex rel. Pacific Tel. & Tel. Co. v. Department of Public Service,* 19 Wn. (2d) 200, 142 P. (2d) 498.

A short history of the litigation will be of aid to a complete understanding of our conclusions in this case. We shall refer to the cities as such or as appellants, to the Pacific Telephone & Telegraph Company as the company, and to the department as respondent.

June 22, 1938, the company filed with the predecessor of respondent a tariff which sought to pass on to the company's subscribers the amount of those taxes assessed as occupational taxes by the cities against the company. There were also filed additional tariffs which sought a general rate increase in this state. The tariffs were suspended and a hearing set before the department.

Before the hearings on the general rates were commenced, the department held hearings on the question of assessing to the company's subscribers the occupational taxes. These hearings demonstrated the fact that other public service companies were allowed to pass on to their consumers the occupational taxes. It was shown that the city of Seattle charged the company $161,319.00 annually for the use of its streets.

During 1939 and 1940, extensive hearings were had in which the consolidated rates were considered. The department then made three orders, dated July 6, 1940, October 31, 1940, and December 17, 1940. The July order refused to grant the company a right to pass on any of the municipal taxes. The order entered in October rearranged the company's rate schedules, resulting in a decreased rate for exchange service and increasing intrastate rates to a rate in excess of that sought by the company. It also ordered the company to pass on occupational taxes on a pro rata basis. The December order gave the company the privilege of passing on to its subscribers occupation taxes, use-of-streets taxes, and amounts payable under franchise ordinances. The company then sought a review of the department's proceeding which fixed the rates. Certain cities in this state also instituted proceedings to review the department's order which allowed the company to pass on its municipal taxes.

A trial was had in the superior court, and an appeal taken from its judgment to this court.

In our former opinion, we carefully and thoroughly considered every question presented, including those relating to the passing on of the municipal taxes. Our opinion was handed down October 22, 1943. July 10, 1944, the superior court entered its judgment and decree upon the remittitur of this court. A portion of paragraph No. 4 of that judgment reads:

"The Department may order the Relator to pass on to the subscribers in any municipality any and all taxes, whether denominated occupation taxes, excise taxes, business taxes, or payments for the use of streets . . ."

July 27, 1944, the cities of Seattle and Spokane filed in this court their petition for recall of remittitur and correction of the judgment to which we have just referred. Paragraphs five and six of the petition read as follows:

"V.

"That Paragraph IV of said judgment and decree on remittitur in so far as it authorizes the Department to 'order the relator to pass on to the subscribers in any municipality

any and all taxes, whether denominated occupation taxes, excise taxes, business taxes or payments for the use of streets or any other payments not required by the provisions of a valid franchise', without determining the facts and without fixing special exchange rates applicable to said communities, is contrary to law and the decision of this Court, as hereinabove set forth.

"VI.

"That said judgment and decree on remittitur if permitted to stand will become the law of the case and permit the Department of Public Service to authorize and direct the Telephone Company to pass on said taxes and charges direct as a matter of law without determining the facts and without fixing special exchange rates in said communities in which said taxes and charges are included in the rate base as operating expenses in said communities. That said judgment and decree on remittitur is not in accord with the decision of this Court and is an interference with the jurisdiction and decision of this Court to the extent hereinabove set forth."

Briefs were filed, and argument was had to the court. The brief on the part of the cities quoted from our decision, as follows:

" 'We are convinced that the department, in so far as such taxes are concerned, has the power to fix special exchange rates applicable to the different communities which will in effect require the rate payers in each community to absorb a sum equal to the amount of the tax which respondent is required to pay that municipality. *More than this the department cannot do.*

" 'Whether or not the present municipal tax situation in this state at this time requires that *the department follow the procedure stated* is a question to be determined by the department.' (Emphasis ours)"

Appellant cities then presented the argument that paragraph four of the judgment on the remittitur did not comply with the quoted excerpt from our opinion, and said:

"Said Judgment and Decree of the Superior Court if permitted to stand will become the law of the case and permit the Department to 'order' the Company to pass on said charges direct as a matter of law, without any determination of the facts above referred to. This is manifestly not in accord with this Court's decision and to that extent is

plainly an interference with the jurisdiction and decision of this Court."

This court denied the petition to recall the remittitur.

April 21, 1947, the department held a hearing, to which appellants and nineteen other cities were invited. July 23, 1947, appellants asked that the case be reopened for the purpose of introducing additional testimony and for re-argument. The petition was granted. The rehearing was conducted August 28, 1947.

October 9, 1947, the respondent made and entered its fifth supplemental order entitled "AUTHORIZING RESPONDENT [the company] TO ADD ALL MUNICIPAL OCCUPATION, BUSINESS, EXCISE AND USE OF THE STREETS TAXES TO ITS CHARGES FOR EXCHANGE SERVICE ON A PRO RATA BASIS AND SUPERSEDING SECTION 7 OF DEPARTMENTAL ORDER OF OCTOBER 31, 1940, HEREIN."

The order accomplished that which its title indicated.

The cities of Seattle, Spokane, Tacoma, and Bellingham brought review proceedings in the superior court of Thurston county. November 7, 1947, that court issued its writ of review. Argument was concluded June 23, 1948. December 15, 1948, the superior court entered a judgment and decree in which it affirmed the fifth supplemental order of the department, except that portion which empowered the company to pass on to its subscribers the taxes imposed for the use of the streets. The company and the department then appealed to this court from that portion of the decree which referred to the use-of-the-streets taxes. The cities appealed from that part of the decree which affirmed the department's order relating to the occupation tax.

We state the appellants' assignments of error in their words:

"The court erred in holding that this court in the first appeal (19 Wn. (2d) 200) decided and ordered that occupation taxes should be passed on to ratepayers in the locality where levied as a matter of law without regard to the 'present municipal tax situation' in the state, or the rate structure, or other pertinent facts.

"2. The court erred in affirming the Fifth Supplemental Order of the Department of Public Utilities passing on to

ratepayers in appellant cities occupation taxes levied therein."

The company assigns error in reversing the fifth supplemental order of the department which related to street use taxes.

Appellants contend that when this court said:

" 'What the final order of the department will be as to the rates which respondent may charge, or whether or not the department will permit or direct respondent to pass along to the rate payers of the respective cities the municipal exactions which are now under discussion, cannot be foretold,'
it made clear as crystal that it did not hold or intend to hold *as a matter of law* the Department *must* order the occupation tax passed on to the rate payers."

█ We are unable to agree with appellants. Opinions must be read, considered, interpreted, and applied as a whole. That is to say, we must consider the whole opinion as written, and take into consideration the factual situation present, and the object to be obtained. The paragraph from which appellants quoted and the two following, read:

"Pursuant to our decision, the three departmental orders will stand reversed, and be remanded to the department for further proceedings. What the final order of the department will be as to the rates which respondent may charge, or whether or not the department will permit or direct respondent to pass along to the rate payers of the respective cities the municipal exactions which are now under discussion, cannot be foretold. Upon the record, the question of whether or not the department has authority under the law to direct or permit respondent to pass to the rate payers the municipal exactions above referred to, is now before us for consideration.

"The cities argue that, by the provision in the department's order of December 16, 1940, the department is in effect unlawfully attempting to exercise the taxing power.

"*Beyond question, for rate-making purposes, the municipal exactions in question are properly charged to the company's operating expense account.* The company, by lawful authority, is required to pay them." (Emphasis ours.)

Again we said:

"Taxes, whether denominated occupation taxes, business taxes, or taxes for the privilege of using public streets, are imposed by a legislative authority, which, unless the imposition is held unlawful by the courts, has the right to enforce collection. There is no element of contract in connection with such a tax."

■■ This court spoke as plainly as possible in holding that all the taxes charged to the company, including occupation taxes and use-of-the-streets tax, should be passed on to the company's subscribers by the rate-making process. We repeat, a tax is an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities. It is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. Taxes, of whatever kind or nature, are part of operating expenses and of necessity must be taken into consideration in fixing rates to be charged by public utilities.

In this case, it appears that the charge for street use was a bone of contention throughout the litigation. The company asked to be allowed to pass on the tax. By a July order, the department refused to allow any municipal taxes to be passed on. The October order allowed the company to pass on municipal occupation taxes. And in the December order, the department concluded that the company could pass on to its subscribers, on a pro rata basis, *occupation taxes, use-of-streets taxes,* and amounts payable under franchise ordinances.

The questions were all considered by the superior court when it reviewed the department's order. This court in its opinion examined the questions relating to all the taxes. The superior court entered its judgment on the remittitur, and included therein the following:

"The Department may order the Relator to pass on to the subscribers in any municipality any and all taxes, whether denominated occupation taxes, excise taxes, business taxes, or payments for the use of streets . . ."

■ When this court denied the petition for recall of remittitur and correction of the judgment, it in effect approved the judgment entered by the superior court.

■ Regardless of any other consideration, it is our opinion that the judgment of the superior court, entered upon the remittitur in obedience to the order of this court, became the law of this case.

The meaning of the term "the law of the case" and its application in various situations, may be found in many of our cases. Typical of these are: *Baxter v. Ford Motor Co.,* 179 Wash. 123, 35 P. (2d) 1090; *Thornton v. Eneroth,* 180 Wash. 250, 39 P. (2d) 379, 48 P. (2d) 1120; *Miller v. Sisters of St. Francis,* 5 Wn. (2d) 204, 105 P. (2d) 32; *Davis v. Davis,* 16 Wn. (2d) 607, 134 P. (2d) 467; *Tucker v. Brown,* 20 Wn. (2d) 740, 150 P. (2d) 604; *Bradley v. S. L. Savidge, Inc.,* 21 Wn. (2d) 556, 152 P. (2d) 149.

In the *Davis* case, it was held:

"This court from its early days has been committed to the rule that questions determined on appeal or questions which might have been determined had they been presented, will not again be considered on a subsequent appeal in the same case. [Citing cases.]"

In the *Tucker v. Brown* case, it appears that we had in a prior case, *Tucker v. Brown,* 199 Wash. 320, 90 P. (2d) 221, decided the case by holding that Brown held certain properties in trust, and in so doing, reversed the trial court, and remanded with instructions to enter a judgment not inconsistent with the opinion. The trial court entered its judgment upon the remittitur. Later, in the second *Tucker v. Brown* case (20 Wn. (2d) 740), the parties representing the Brown interests challenged the validity of the judgment to which we have just referred. In holding that the judgment became the law of the case, we said:

"If appellant was not satisfied with the judgment entered by the trial court upon the remittitur, it could have petitioned this court to correct that judgment. Having failed to take appropriate action, appellant is foreclosed from in any way objecting to the judgment. The decision of this court in *Tucker v. Brown, supra,* is not an authority, but is a binding,

conclusive judgment which determines that the funds and property turned over to Brown by Mrs. Smith were held by him as a trustee. The judgment of the trial court on remittitur carried into effect the judgment of this court with the same force and effect of any final judgment.

"Whether or not the evidence was sufficient to warrant the entry of the judgment was immaterial, because the judgments of this and the trial court became the law of the case. [Citing cases.]"

The situation presented in the two cases just mentioned and that obtaining in this and the first rate case, are entirely alike. The Brown interests in the second case cited, were held to be bound by the judgment of the superior court entered after the remittitur went down. So, in this case, appellants and the department were bound to obey the mandates of this and the superior court. Those mandates compelled the department to allow the company to pass on to its subscribers the occupation taxes, and the taxes imposed for the use of the streets.

We now hold that the department acted correctly and in full compliance with our decisions and the superior court's judgment, and that its order should be approved.

The judgment of the trial court in this case will be modified to the extent herein indicated.

JEFFERS, C. J., ROBINSON, SCHWELLENBACH, and GRADY, JJ., concur.