OGDEN CITY v. PUBLIC SERVICE
COMMISSION et al.

No. 7884. Decided Aug. 29, 1953. (260 P. 2d 751.)

438

See 62 C.J. Telegraphs and Telephones, sec. 109. Discrimination in fixing of utility rates. 52 Am. Jur., Telegraphs and Telephones, sec. 87; 4 A. L. R. 2d, 595.

*Paul Thatcher, Jack A. Richards* and *Charles H. Sneddon,* Ogden, for appellant.

*Clinton D. Vernon,* Atty. Gen., *Sid N. Cornwall* and *Van Cott, Bagley, Cornwall & McCarthy,* Salt Lake City, for respondents.

HENRIOD, Justice.

Review of a Commission order allowing the Telephone Company's application to charge and bill subscribers of particular areas for excise, sales, franchise or occupation taxes, costs of services rendered to local political sub-divisions by agreement, or other local impositions, where such impositions are exacted by local governing bodies. Affirmed.

Ogden is such an area governed by such authority. Its subscribers to the company's service, distinguished from its residents, are affected by the order, for better or worse. Of 46 cities and communities whose subscriber-residents similarly are affected, including Salt Lake City, whose population we judicially note as being better than 3 times that of Ogden and better than ¼ of the State, only Ogden protested. There are 94 cities and communities representing the balance of the exchanges in the state whose subscriber-residents are affected, but where no local impositions attach. Where impositions on local gross revenues are extant, the exactions range from .39% to 7.28% of local gross revenues, Ogden's being 1.44% and Salt Lake's being 2% at the time of hearing (as compared with Salt Lake's 1% at the time of the next preceding hearing). The order increases company earnings by .21%, well within the maximum prescribed, but no future increase can result by the proposed tariff, whether other cities exact local levies, increase them, or not.

In 1941, by ordinance, Ogden permitted the company, for the ensuing 25 years, the use of its streets to install transmission facilities for a sum equal to 1% of local exchange revenues plus .44% representing value of free services rendered the City.

Such local impositions are a cost of doing business, calcuable in determining rates.[1] The consumer ultimately bears this cost. Heretofore such cost has been born pro rata, statewide, by company subscribers, whether living in an area whose local government exacted tribute or not. The Commission decided there was an unfair discrimination as to subscribers in non-imposition areas since they helped to pay other areas' local levies without correlative advantage. Ogden says no evidence supports such conclusion,—but an exhibit names the cities charging the company, with stated percentages of local gross revenues, and those not charging the company, making it obvious that subscribers in the latter assisted in paying the imposts of the former under the billing system demonstrated. Whatever the degree of discrimination, aggravation was sure to result, when the most populous city, Salt Lake, whose residents represent by far and away the greatest number of phone users, doubled its take from the Company.

Where there is evidence such as this, we cannot reverse the Commission, and we cannot substitute our judgment for that of the Commission, though other appellate tribunals might do so, being authorized to weigh the evidence.[2] We can but determine whether reasonable minds could differ on the evidence adduced.[3] Con-

---

[1]*City of Elmhurst* v. *Western United Gas & Elec. Co.* 1936, 363 Ill. 144, 1 N.E. 2d 489.

[2]Title 76-6-16, U.C.A. (1943), Title 54-7-16, U.C.A. (1953); See *Los Angeles & S. L. R. Co.* v. *Public Utilities Comm. of Utah*, (St. John Station Case), 1932, 80 Utah 455, 15 P. 2d 358.

[3]*Los Angeles & S. L. R. Co.* v. *Public Utilities Comm. of Utah*, 81 Utah 286, 17 P. 2d 287.

sequently Ogden's objection that the Commission erred in requiring her to sustain the burden of proof is answered.

Ogden says the order violated constitutional restraints against 1) impairing contract obligations,[4] 2) extinguishing obligations,[5] 3) interfering with municipal functions,[6] and transforming franchise fees into use taxes.[7] Without discussing these objections, we point to authority which we believe answers such contentions.[8]

The question remains: Can the Commission permit a utility to charge and bill subscribers of an area, for payment of imposts on the company levied by local governmental authority of that area?

In a distinguishable case, Ogden finds support for a negative answer,[9] and another case agrees where franchises only are involved, but deserts her and supports the Commission, where other levies are imposed,[10]—a distinction we logically cannot perceive, albeit there may be one. But competent and well-reasoned authority agrees with the Commission,[11] and conforms more nearly to the views of

---

[4]Art. 1, § 10, U.S. Const.; art. 1, § 18, Utah Const.

[5]Art. VI, §§ 27 and 29, Utah Const.

[6]Art. VI, § 29 and Art. XII, § 8, Utah Const.

[7]Art. VI, § 29, Art. XI, § 5(a); and Art. XIII, § 5, Utah Const.

[8]*Salt Lake City* v. *Utah Light & Traction Co.*, 1918, 52 Utah 210, 173 P. 556, 3 A.L.R. 715; *City of Elmhurst* v. *Western United Gas & Elec. Co.*, supra; *State ex rel. Pacific Telephone, etc.*, v. *Dept. of Public Service*, 1943, 19 Wash. 2d 200, 142 P. 2d 498; *U. S. Smelting, Refining & Milling Co.* v. *Utah Power & Light Co.*, 1921, 58 Utah 168, 197 P. 902.

[9]*State ex rel. City of St. Louis* v. *P. S. C.*, 1952, 362 Mo. 977, 245 S.W. 2d 851, 855.

[10]*State ex rel. Pacific Telephone & Telegraph Co.* v. *Dept. of Public Service*, 1943, 19 Wash. 2d 200, 142 P. 2d 498.

[11]*City of Elmhurst* v. *Western United Gas & Elec. Co.*, supra.

this court, particularly where, as here, ever-changing and probably ever-increasing local imposts appear on the horizon which neither the legislature nor the company to date has controlled, and where, should we conclude otherwise, discrimination would fluctuate in direct proportion to the actions of a myriad of local governing bodies.

The mere fact that Salt Lake upped its exaction by 100%, considering population disparity, would point with almost mathematical certainty to the conclusion that under the former system, without the Commission's order, in any rate schedule adjusted with such increase, Ogden subscribers would have a higher phone bill by paying their pro rata percentage of local levies as statewide subscribers, than they would were they to pay the arbitrary 1.44% of local gross exchange revenues authorized by the Commission. If such assumption be in error, and we think it not, it requires little imagination to foresee the possibility or probability of such result in the future.

Apparently Ogden lost sight of the obvious fact that its subscriber-citizens for years have been paying their share of the cost represented by local levies—perhaps as much or more than the 1.44% of gross local revenues of which Ogden complains. The pro rata share heretofore has been lumped into the amount of the phone bill. Were Ogden's arguments sound, it follows that her subscriber-residents unwarrantedly have paid and in the future should not have to pay any part of the cost represented by local levies, since any contribution toward payment of such cost of doing business, pro tanto, that formerly was hidden in the phone bill, would offset any amount Ogden might realize from its franchise with the company,—possibly exceeding such proceeds. Thus, every argument with respect to impairment of contract, extinguishment of obligation and the like equally would be pertinent and applicable to a pro tanto contribution whether it be .5%, 1.%, 6%, or 1.44% of local gross revenues, there being no magic in percentage

or the circumstance that the contribution equals the local levy, so far as fundamental principles go. The order of the Commission is not only an exercise of its legal authority, but appeals to basic equities,—at least eliminating one discrimination in a field where it is impossible to eliminate them all.

Having decided as we do, we feel it unnecessary further to comment on the other learned arguments of counsel.

McDONOUGH, CROCKETT and WADE, JJ., concur.

WOLFE, C. J., concurs in result.