## ODGEN CITY v. PUBLIC SERVICE COMMISSION et al.

No. 7907. Decided Aug: 29, 1953. (260 P. 2d 654.)

See 29 C.J.S. Electricity sec. 33. Discrimination in fixing of utility rates. 43 Am. Jur., Public Utilities and Service, sec. 171; 4 A.L.R. 2d 595.

*Paul Thatcher, Jack A. Richards* and *Charles H. Sneddon,* Ogden, for appellant.

*E. R. Callister, Jr., Atty. Gen., Peter M. Lowe, J. Lambert Gibson* and *F. Gerald Irvine,* Salt Lake City, for respondents.

HENRIOD, Justice.

Review of a Commission order *directing* the Power Co. to charge and bill its customers residing in a municipality, as a separate item, pro rata, for exactions of "any municipality wherein is imposed any municipal franchise, occupation, sales or license tax" against the company, Affirmed.

Recently we approved a similar order in the case of the Telephone Co.,[1] on application. In the instant case the Power Co., did not petition for such an order, but only for

[1]*Ogden City* v. *Public Service Comm. of Utah,* 123 Utah 437, 260 P. 2d 751.

readjustment of rates. It resisted the order since it had assured local authorities it had no intention of billing local subscriber-residents for a pro rata share of the local imposition. The company's frank consistency and adherence to principle are commendable, but its private understanding hardly could bind the Commission.

The matter of billing and charging subscriber-residents in the area where such impositions occurred, arose sua sponte with the Commission at the rate hearing. No objection to statutory procedural requirements was voiced in the hearing so that discussion thereof seems unnecessary here.

The basic problem attends both cases: Whether customers in an area whose governing authority exacts taxes, fees or other imposition against the utility, should pay the cost of operation represented by the local levies, or whether all customers of the company, statewide and pro rata, should shoulder that burden.

In the present case we affirm the order of the Commission and believe it was entered within the regulatory authority with which the Commission is endowed, being supported by competent evidence. The order, incidentally, has the effect of rendering uniform the practices of the 3 regulable public service companies dispensing gas, telephone and electric services, with respect to allocation for payment, of that item of operational cost represented by the local impositions. The desirability of such uniformity cannot be gainsaid, though we do not pass on whether or not it might be a controlling factor.

Mindful of the authorities cited by Ogden as to burden and quantum of proof, with which we agree, we believe the evidence sufficient and of such character in this case as would justify a "reasonable judging mind" to conclude as did the Commission.[2]

---

[2]*Los Angeles & S. L. R. Co.* v. *Public Utilities Comm. of Utah,* 1932, 81 Utah 286, 17 P. 2d 287.

Undeniable it is that 1) areas existed where impositions on the utility were and were not extant; 2) all subscribers, statewide and pro rata, paid such exactions; 3) after the exaction of such impositions, and upon adjustment of rates based thereon, subscribers statewide paid more for power. Those in non-imposition communities obviously received no corresponding benefit. Consequently, discrimination in some degree, was inevitable.

The Company's president asserted that in the past, because of lower unit operational costs, densely populated areas (where local impositions generally prevailed) had benefited outlying areas having no impositions, since rates for like service were the same, statewide, irrespective of residence, in or out of a local imposition area, which, in reverse, represented a discrimination against users in the areas where such impositions existed. The argument is suggested that the local imposts tend to lessen or neutralize the discrimination against subscribers in non-imposition communities. But neutralizing one discrimination by creating another is no answer. Public policy seeks the elimination of as many discriminations as possible in a field where total elimination thereof is difficult or impossible of achievement. If the discrimination adverted to exists in fact, it is for the Commission to help write its obituary, rather than to cancel its effectiveness by permitting the creation or persistence in being of another.

The facts before the Commission indicate that users in non-imposition areas, share the burden of paying the increased costs of operation resulting from local imposts elsewhere. The Commission having decided as it did we cannot say it did so arbitrarily and without foundation in reason. We cannot substitute our judgment for that of the Commission under such circumstances.[3]

---

[3]*Los Angeles & S. L R. Co.* v. *Public Utilities Comm. of Utah* (St. John Station Case), 1932, 80 Utah 455, 15 P. 2d 358.

Our comments in the Telephone Case anent constitutional questions, and sharing operational costs, whether on a state-wide, pro rata basis, or by allocation to users in local imposition areas, are equally pertinent here, and we answer such matters here as we did there.

McDONOUGH, CROCKETT and WADE, J.J., concur.

WOLFE, C. J., concurs in the result.