STATE of Missouri, at the relation of the CITY OF WEST PLAINS, Missouri, and the City of Mountain View, Missouri, municipal corporations, Relators-Appellants,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, and Tyre W. Burton, E. L. McClintock, Charles L. Henson, M. J. McQueen, and D. D. McDonald, as Members of said Public Service Commission, and Western Light & Telephone Company, a corporation, Respondents.

No. 45807.

Supreme Court of Missouri, En Banc.

March 10, 1958.

Esco V. Kell, West Plains, for appellants.

Glenn D. Evans, General Counsel, Public Service Commission of Missouri, Jefferson City, for respondents Public Service Commission and Tyre W. Burton, E. L. McClintock, Charles L. Henson, M. J. McQueen and D. D. McDonald, Members of Said Commission.

Hedrick & Hedrick, Robert W. Hedrick, Robert W. Hedrick, Jr., Jefferson City, Thompson, Mitchell, Thompson & Douglas, James M. Douglas, Richard L. Eckhart, St. Louis, for respondent Western Light & Telephone Co., Inc.

James V. Frank, City Counselor, Forrest G. Ferris, Jr., Associate City Counselor, St. Louis, Marvin E. Boisseau, Director

of Law, City of University City, amici curiæ.

COIL, Commissioner.

Respondent Western Light & Telephone Company, Inc., herein sometimes called Western, a Kansas corporation licensed to and furnishing telephone service in 36 exchanges located in 36 Missouri municipalities, applied to respondent Public Service Commission of Missouri, herein sometimes called commission, for an order authorizing Western to file a new schedule of rates calculated to produce a reasonable rate of return and authorizing applicant to file a general rule with such rate schedule authorizing it to "add to its basic rates in each community the pro rata amount of the occupational tax levied in said community." The commission held hearings on March 29 and April 13, 1955. Three cities, with leave, intervened and others, pursuant to notice, were represented at either or both hearings. The commission staff had made an examination and investigation of Western's books and records and adduced evidence of its findings. On August 2 and August 8, 1955, the commission filed its report and order and supplemental order, respectively, in which it found, in effect, that to receive a fair and reasonable return on its investment, which the commission fixed at 6.20 per cent, Western would need to increase its gross annual revenue in the approximate sum of $100,000; that the desired result would be accomplished (i. e., a fair return procured) by increasing rates sufficiently to produce $85,500 in additional gross annual operating revenue and eliminating license and occupation taxes ($14,-491.85 for 1954) as operational expenses payable from over-all revenues and passing on such taxes to the subscribers in the respective cities and towns levying such taxes by means of surcharging Western's bills in the appropriate amounts.

The cities of West Plains and Mountain View have appealed from the judgment of the circuit court affirming the order of the commission. They attack, however, only that portion of the order which permits and directs Western to file a general rule providing for the passing on to telephone subscribers residing in a particular municipality the license and occupation taxes levied by that municipality. Inasmuch as the reasonableness and lawfulness of only that limited portion of the commission's order is involved on this appeal, it will be unnecessary to set forth the substantial evidence which was adduced in the main valuation and rate case and from which the commission found Western's need for additional revenue to produce a fair return on its net investment. The evidence which specifically pertained to the instant question was that, of the 36 exchanges operated by Western, 11 of them were in cities or towns which levied no license or occupation tax; that the other 25 levied a license or occupation tax; that of those, 10 assessed a fixed annual sum varying in amount from $10 to $75; that the remaining 15 levied a tax in an amount equal to 2, 3, 4, or 5 per cent of Western's gross receipts. The 25 levies ranged in amounts during the calendar year 1954 from $10 to $2,964.42, and the total amount of all such taxes paid by Western for that year was $14,491.85.

The evidence was also that Western's rates had been fixed upon a systemwide basis in five classifications based upon the number of stations involved. License and occupation taxes theretofore had been included in the "operational expenses" of the company along with all other taxes. Some of Western's 36 exchanges operated at a loss and others at a profit. Those operating at a profit might carry the weaker ones. The proposed rates for each class of service to produce the additional revenue necessary to produce a fair return had been increased without regard to whether that class of service had theretofore more than paid its way. The cities and towns in which were located Western's 36 exchanges extended from Atlanta in north Missouri to West Plains and Willow Springs in the south, so that many of the various ex-

changes were relatively far removed from the localities of other exchanges in Western's system.

The City of St. Louis and the League of Municipalities of St. Louis County were granted leave to and have filed a brief as amicus curiae. Appellants contend that the order of the commission is unreasonable and unlawful because the portion of the order here in question was beyond the commission's jurisdiction, constituted an attempt to interfere with and restrict the taxing power of municipalities, and was not supported by substantial and competent evidence. Amicus curiae contends that there was no reasonable basis for the findings and order of the commission and therefore the order was unlawful and unreasonable.

The reviewable question is whether the commission's order was reasonable and lawful. Section 386.510. (All section citations are to sections of RSMo 1949, V.A. M.S.) It should be noted that the case before the commission in which the instant order was made was a valuation and rate case wherein the primary and basic questions for decision were whether Western was earning a fair return and, if not, what constituted a fair return and what action was necessary to permit the company to earn a fair return. As stated, the commission found that Western was not earning a fair return; that it was entitled to a rate increase; that 6.20% would constitute a fair return; that Western would need to receive an additional annual gross revenue (or its equivalent) of $100,000 in order to produce a return of 6.20%; that its revised schedules should provide for an increase in rates to the various classifications of Western telephone subscribers sufficient to provide for a total increase in gross annual revenue of $85,500, and for the absorption by particular subscribers of license and occupation taxes.

Consequently, so far as concerns the decision of the present issue, these propositions are established: appellants and amicus curiae concede that Western was entitled to a rate increase to produce the fair return of 6.20%; that to produce such a return would require additional gross revenue of $100,000; that the rates set forth in the schedules filed containing the increases are fair and nondiscriminatory; and appellants and amicus curiae tacitly concede that if the $15,000 of the $100,000 necessary additional gross revenue is not obtained by passing on license and occupation taxes in accordance with the order of the commission, the evidence justified, and Western was entitled to, a further increase in rates in the various classifications sufficient to provide an additional $15,000 gross revenue.

The lawfulness of the order depends primarily on whether the commission had statutory authority and power to permit the general rule to be filed as a result of the commission's total rate determination. And if the commission had such authority and power, the reasonableness of that portion of the order depends upon whether it was unreasonably and unjustly discriminatory as to particular telephone subscribers who, as a result of the order, paid in addition to the amount provided by the revised rates, their pro rata share of the license and occupation taxes assessed by the respective municipality in which they resided.

 Appellants point out that the power and authority of the Public Service Commission is only that specifically granted by statute or warranted by clear implication as necessary to render a specifically granted power effective. It would appear that the statutory power and authority which the commission has to pass upon the reasonableness and lawfulness of rates and to determine and pass upon the question of what rates are necessary to permit a utility to earn a fair and reasonable return (§§ 392.-220, 392.230, 392.240) necessarily includes the power and authority to determine what items are properly includable in a utility's operating expenses and to determine and decide what treatment should be accorded such expense items. Cf. State ex rel.

Western Union Tel. Co. v. Public Service Commission, 304 Mo. 505, 517, 264 S.W. 669, 672 [6], 35 A.L.R. 328. Section 392.-240(2) provides in part: "Whenever the commission shall be of the opinion, * * * that the rules, regulations or practices of any * * * telephone corporation are unjust or unreasonable, * * * the commission shall determine the just, reasonable, adequate, efficient and proper regulations, practices, * * * thereafter * * to be observed and used and to fix and prescribe the same by order * * *." The rules and regulations prescribed by the commission for Western pertaining to the manner in which the utility would thereafter treat the expense item of license and occupation taxes became an integral part of Western's schedule of rates and charges. See State ex rel. St. Louis County Gas Co. v. Public Service Commission, 315 Mo. 312, 317, 286 S.W. 84, 86 [2].

█ We are of the view, therefore, that the commission, as a part of its power and duty to establish reasonable rates which would produce a fair return, could lawfully provide for and prescribe the regulations and practices to be indulged by the utility to produce the desired result, including the power to permit Western to file a general rule with its rate schedule authorizing that utility to pass on license and occupation taxes to certain subscribers.

█ The remaining question is whether the order with respect to filing the general rule was reasonable or, conversely, whether it was unreasonable, arbitrary, or capricious. For the order to have been reasonable it must have been based upon competent and substantial evidence upon the whole record. Mo.Const.1945, Art. V, § 22. And while, as respondents contend, perhaps essentially the reasonableness of the order and, in turn, the validity of the general rule permitted by the order are not necessarily dependent upon the commission's finding that Western's prior treatment of license and occupation taxes was unjustly discriminatory, still, in the instant case, the commission did so find, and, in effect, made the reasonableness of its order dependent upon such finding. The commission found that Western's practice of treating license and occupation taxes as an operational expense reflected in and paid by collections from systemwide rates was unjustly discriminatory as to those subscribers, who did not reside in a municipality which levied such a tax or who resided in a municipality which levied a proportionately smaller tax than other municipalities wherein Western's exchanges were located. The commission also found that by passing such taxes to the respective consumer beneficiaries for payment, the existing unjust discrimination would be eliminated.

█ First, then, was there substantial evidence from which the commission reasonably could have found that Western's prior treatment of license and occupation taxes was unjustly discriminatory as to the above-described consumers?

As stated, the evidence was that some of the cities and towns wherein Western's 36 exchanges were located levied no license tax; that others levied an extremely small flat rate amount; that others levied taxes based on a percentage of Western's gross receipts, varying percentagewise from 2 to 5. That evidence and the justifiable and reasonable inferences therefrom to the effect that the only beneficiaries of such taxes levied by individual municipalities were the residents of that municipality and, conversely, that nonresidents received no benefit from such taxes, constituted sufficient competent and substantial evidence from which the commission reasonably could have found that Western's practice of treating license and occupation taxes in such a manner as to require subscribers systemwide to pay a portion of such taxes from which they received no benefit amounted to an unjust discrimination as to those subscribers.

The proposition, on its face, that certain nonbeneficiary subscribers have had to pay taxes for the sole benefit of other sub-

scribers is such that from it the commission reasonably could have found that Western's former treatment of license and occupation taxes gave some of its customers an undue preference over other customers and that, therefore, the practice was unjustly discriminatory. And the finding of unjust discrimination was not dependent upon a further finding that the commission's order eliminating that *unjust* discrimination also "fairly adjusted" every other inequality which may have existed. A practice is no less unjustly discriminatory simply because speculatively it may balance another unjustly discriminatory practice.

It would seem to follow that the commission's order permitting and directing Western to treat license and occupation taxes henceforth so as to place the burden of those taxes upon the respective subscribers who received the benefits therefrom, on its face, eliminated the unjust discrimination which theretofore existed as to the non-beneficiary consumers.

■ There is, however, a further question involved, viz., whether the commission's order was reasonable even though there was no direct evidence before the commission to demonstrate that the very order which eliminated a specific unjust discrimination as to certain subscribers did not thereby cause Western's charges to be unjustly discriminatory as to those subscribers who were residents of the cities which levied license taxes and which subscribers were to absorb the tax. For it is true, of course, that a subscriber living in a town in which was located one of Western's exchanges would, as a result of the commission's order, pay for his telephone service not only the rate prescribed by the commission for the classification in which the subscriber fell but, if that municipality levied a license or occupation tax, that subscriber would pay in addition his pro rata or proportionate share of the tax that had been levied by his municipality. Was the commission, as an essential condition upon

which the reasonableness of its order depended, required to have before it and to examine evidence disclosing the nature and extent of each inequity which inhered or existed in Western's systemwide rate structure, and priorily determine that its order would not upset the balance of inherent inequities to the extent of creating an unjust discrimination as to the consumers who were to pay the taxes? We think not.

It is true that the theory of rate making on a systemwide basis assumes that inequities of a sort will exist within the system and that a rough balance of such inequities will usually result, so that the discrimination remaining is not unjust discrimination. For example, as noted, the evidence in this case indicates that certain of Western's exchanges made money and others did not, and that the ones that made money may have carried the ones that did not, and that the increase in the rates was made without regard to whether a particular class of service had theretofore more than paid its way. Consequently, it is undoubtedly true that, compared to a rate for each exchange based upon the exact cost of and the amount of services rendered at each of Western's exchanges or a rate based upon the exact cost of and the amount of services furnished in each of Western's local service areas (even though each such area might encompass more than one exchange), Western's systemwide rates would not as nearly reflect the exact costs involved in rendering service at a particular exchange as would an exchange or local service area rate. Thus, to some indefinite and variable extent (depending upon the circumstances and the locations of the service units of the particular utility) inequities in systemwide rates exist and a subscriber at exchange A may pay proportionately more for the service he receives than a subscriber at exchange B.

We are of the view, however, that it was not necessary that the commission have before it evidence positively negativing the speculative and conjectural proposition that

the result of the commission's order eliminating the unjust discrimination existing by reason of Western's prior treatment of license and occupation taxes would upset the balance of other inequities inhering in Western's systemwide rate structure to the extent of thereby causing a different unjust discrimination. It was sufficient that there was nothing before the commission to indicate that such would occur. If, by reason of the commission's order eliminating from Western's rate structure that which it reasonably found amounted to an unjust discrimination as to certain subscribers, it should occur that the balance of inequities inhering in Western's systemwide rate structure was upset to the extent that an unjust discrimination thereby has been created as to other of Western's subscribers, the entire rate structure and all questions concerning rates, including as an integral part thereof the order permitting and directing the filing of a general rule relating to the passing on of taxes, remain under the control and scrutiny of the commission and any such result is correctable.

The commission may have believed that it was more likely that by continuing to permit Western to treat as operational expense, license and occupation taxes levied and collected by individual cities and towns in amounts largely in the uncontrolled discretion of the governments of those towns for the sole benefit of each levying municipality from consumers who received no benefit from such taxes would more surely defeat and upset the balance of inequities inhering in Western's systemwide rate structure than would the elimination of such a practice. And the commission reasonably could have believed, therefore, that each municipality had within its power the means to upset Western's systemwide rate structure and to do so for the sole and special advantage of each municipality and to the disadvantage of all Western's consumers not residing in that particular locality. And the commission may also have reasonably believed that license and occupation taxes is an expense item which lends itself peculiarly to being isolated and treated differently than other expense items. Certainly a license or occupation tax levied by a municipality against a telephone company operating in many municipalities within the state, the amount of which is entirely beyond the control of the utility (at least so long as the amount of the tax does not exceed the bounds of reasonableness), is not like an operating expense such as the cost of labor, or the cost of materials, or other usual expenditures for day-to-day operation in amounts within the utility's control. And the commission may have also reasonably found that a license or occupation tax is unlike most other taxes in that most other taxes benefit all subscribers systemwide; albeit that there may be some other taxes in the same category, benefitwise as gross receipts taxes. But if there are other taxes or other expense items which when so treated that they are paid from revenue collected systemwide, result in unjust discrimination to certain consumers, then those items should be treated differently and in such a manner as to eliminate the resulting unjust discrimination.

Appellants and amicus curiae vigorously contend that an opinion in the instant case affirming the order of the commission would be in direct conflict with this court's opinion in State ex rel. City of St. Louis v. Public Service Commission, 362 Mo. 977, 245 S.W.2d 851, 852 (herein sometimes referred to as the county water case). In that case, the St. Louis County Water Company initiated a proceeding in the Public Service Commission to correct alleged inequities which allegedly existed between the water company's consumers by reason of taxes levied on water company's gross receipts in 16 of the 66 incorporated areas in the company's system. "The company's property had been valued, its rates fixed and its fair return determined upon a 'system wide' basis." The taxes there, like those in the instant case, ranged from two to five per cent of the gross receipts in some of the areas and there was a flat annual charge in at least one of the involved cities. The

company filed new rate schedules which set forth the same basic rates as theretofore in effect, "but in all the cities in which a gross receipts tax was levied and in which the company did not have a franchise or fire hydrant contract, the company 'allocated' or added to the water consumer's bill the amount of the tax. In the cities in which the company had a franchise and fire rental contract the company proposed to absorb two per cent of the tax and add any sum in excess of two per cent to the consumer's bill." 245 S.W.2d 852. The commission found in that case that it was unjustly discriminatory for a consumer in one area to be burdened with the payment of any part of taxes exacted by another area and that the consumers in the municipalities obtaining revenue from such taxes should bear the burden of providing that revenue. (The commission further found that the fact of the existence of a franchise was immaterial and that the rates themselves should reflect the absorption of the taxes by the various consumers rather than adding the appropriate amount of the tax as a separate item on each consumer's bill.) New schedules reflecting the commission's findings were filed and approved. This court reversed the judgment of the circuit court which had affirmed the finding and order of the commission for the ultimate reason that there "is no reasonable basis upon this record for the commission's finding and order." 245 S.W.2d 855.

Respondents contend that the county water case is wholly inapplicable to the question presented in instant case for the reason that the county water case was not, as was instant case, a valuation and rate case in which the utility asked for an increase in rates in order to produce a fair return on its investment and adduced evidence before the commission justifying the increase in rates allowed. On the contrary, say respondents, the county water case was simply a proceeding in which the amount of gross receipts taxes was added to the basic rates of the water company without any evidence whatever to justify the resulting

increase in rates. In other words, the effect of the order of the commission in the county water case was to permit the water company to receive increased revenue by eliminating that which had theretofore been treated as operational expense and passing on that operational expense to the consumers, thereby increasing the gross revenue of the water company and, ostensibly at least, increasing its rate of return; and that, in the absence of any evidence justifying additional revenue or any evidence from which the commission could have found that the company was not earning a fair return on its investment or what constituted a fair return.

It is true, as respondents contend, that the county water case, supra, does so hold, and for that reason the result in that case was and is correct. Respondents further contend, however, that that case stands for nothing more or less than as stated above and that any other discussion contained in the opinion is dictum. We do not agree. While there is language in that opinion from which it reasonably may be argued (as do respondents) that the court intended the opinion to be applicable only to cases in which there had not been "a complete valuation of all the companies' properties and a complete determination of rates and fair return" (245 S.W.2d 854), nevertheless, as we construe the county water case opinion, it holds that there was no reasonable basis for the commission's finding and order, not only because there was no evidence to justify an increase in rates but for the additional and separately sufficient reasons that (1) the method of passing on the gross receipts taxes there prescribed by the commission erroneously ignored "the theory and practice of rate making and utility operation upon a systemwide basis" and (2) the order erroneously and without foundation presupposed "that there was no discrimination in the former uniform rates in the first place," and there being no evidence from which it could be found that any discrimination resulting from the exaction of gross receipts taxes

was unfair or unjust discrimination, the commission's order was unreasonable. In so far as that opinion would require us to hold the commission's order in the instant case unreasonable for reason (1) above or require us to hold the commission's order unreasonable on the ground that there is no evidence in instant case from which it reasonably could be found that Western's prior treatment of occupation and license taxes was unjustly discriminatory, we are of the view that the county water case should no longer be followed.

■ What we have said heretofore may sufficiently indicate our reasons for that conclusion. However, we may amplify our views in so far as concerns systemwide rate making. We are able to discern no legitimate reason or basis for the view that a utility must operate exclusively either under a systemwide rate structure or a local unit rate structure, or the view that an expense item under a systemwide rate structure must of necessity be spread over the entire system regardless of the nature of the item involved. Experts in utility rates may well conclude that a "hybrid system" or a "modified system" of rate making, wherein certain expense items are passed on to certain consumers and certain items are thereby treated on a local unit basis and others on a systemwide basis, is the system which will produce the most equitable rates. And it would appear to be the province and duty of the commission, in determining the questions of reasonable rates, to allocate and treat costs (including taxes) in the way in which, in the commission's judgment, the most just and sound result is reached. And it may well be that gross receipts taxes paid by a utility, while labeled "operation expense" on the books is not a true operational expense and should be treated differently in so far as concerns the source of the money with which that "expense" is to be paid. And, in any event, the fact that an order may ignore "the theory and practice of rate making and utility operation upon a systemwide basis" does not, standing alone, tend to demonstrate

the unlawfulness or unreasonableness of that order.

■ Our function is not to substitute our judgment for that of experts in the field of rate making, but rather to determine whether the experts' order was lawful and reasonable. "In a question of rate making there is a strong presumption in favor of the conclusions reached by an experienced administrative body after a full hearing * * *." State ex rel. and to Use of City of St. Louis v. Public Service Commission, 326 Mo. 751, 771, 34 S.W.2d 507, 515. "Upon this review, the question is not whether the court, if the matter were before it, would make the same order made by the commission, but only whether the order as made by the commission is reasonable and lawful. * * * To justify a reversal of an order of the commission falling within its discretionary power on the ground that such order is unreasonable, it must appear that the action of the commission was arbitrary or without reasonable basis, and the burden of showing that the commission's order * * * is unreasonable or unlawful is upon the" appellants here. State ex rel. Alton Transp. Co. v. Public Service Commission, 330 Mo. 1, 9, 49 S.W.2d 614, 617 [1–4]; Section 386.430. "In all trials and proceedings growing out of the exercise of the powers of the commission before the courts the rates and schedules ordered by the commission are prima facie lawful and reasonable, and the burden of proof is upon the party seeking to set aside 'any determination, requirement, direction or order of said commission' * * *. The order of the commission fixing the value of the company's property, the rate which it is allowed to earn on that property, and the rates to consumers, are prima facie reasonable and lawful, * * *." State ex rel. City of St. Louis v. Public Service Commission, 329 Mo. 918, 927, 47 S.W.2d 102, 104 [1, 2].

■ We find no merit in the contention that the commission's order illegally inter-

# 934

feres with appellants' taxing power authorized by Mo.Const.1945, Art. X, §§ 1, 2. The argument is that appellants, pursuant to constitutional authority, levied an occupation tax against Western but that the commission, by its order, has converted the tax into one against the subscribers to the telephone service. The conclusion is fallacious. The utility remains the party taxed and the utility still pays the tax—the only effect of the commission's order in that respect is to permit the utility to collect the money with which to pay the tax from the tax beneficiaries rather than from all subscribers. It must be apparent that a utility's subscribers will always provide the money for payment of all taxes—the utility has no other source of revenue—the only question is which subscribers should pay which tax. Under the commission's order, Western receives no more money and no higher rate of return than it would receive under its prior practice of collecting occupation taxes systemwide.

■ Appellants' two other contentions, that the order and general rule are vague and indefinite and permit cities to exercise rate-making powers, were not set forth in appellants' application for a rehearing before the commission and for that reason we are precluded from considering them. Section 386.500; State ex rel. and to Use of City of St. Louis v. Public Service Commission, supra, 34 S.W.2d 511 [4].

While our conclusion in this case does not rest upon the fact that other courts before whom the question has come have permitted the passing on to particular subscribers gross receipts taxes, and while our citation of the following cases is not meant as approval of all that is said in them, we, nevertheless, call attention to: Ogden City v. Public Service Commission, Utah, 260 P.2d 751; Odgen City v. Public Service Commission, Utah, 260 P.2d 754; State ex rel. Pacific Telephone & Telegraph Co. v. Department of Public Service, 19 Wash.2d 200, 142 P.2d 498, and State ex rel. City

of Seattle v. Department of Public Utilities, 33 Wash.2d 896, 207 P.2d 712; City of Newport News v. Chesapeake and Potomac Telephone Co. of Virginia, 198 Va. 645, 96 S.E.2d 145 (contra, however, to State ex rel. City of St. Louis v. Public Service Commission, supra, even as to the part of that case which has been approved by the instant case); City of Elmhurst v. Western United Gas & Electric Co., 363 Ill. 144, 1 N.E.2d 489. We also call attention to the fact that we have been cited to no case nor have we found one (other than State ex rel. City of St. Louis v. Public Service Commission, supra) wherein a utility was denied permission to pass on to beneficiary consumers gross receipts taxes.

Our conclusion is that it has not been demonstrated upon this record that the commission's instant order is unlawful or unreasonable and, therefore, the trial court's judgment affirming the commission's order is affirmed.

PER CURIAM.

The foregoing opinion by COIL C., is adopted as the opinion of the court en Banc.

DALTON, C. J., and HOLLINGSWORTH, HYDE and WESTHUES, JJ., concur.

LEEDY, EAGER and STORCKMAN, JJ., dissent.

LEEDY, Judge (dissenting).

For rate-making purposes and fair return, the utility here in question desires to, and does, operate on a systemwide basis. The gross receipt taxes levied by several of the municipalities in which it operates constitute an operating expense of the utility. The principal opinion sanctions the deletion of this single item from the systemwide basis, and, treating it unlike

any other item, permits the utility, with the consent of the Public Service Commission, to transfer the incidence of the tax from the company directly to those telephone users whose communities levy such a tax. If this may be done with respect to this item, then why not as consistently make another exception in the case of ad valorem taxes? They undoubtedly vary in the different communities. The list of items could be extended indefinitely. In my opinion, the door should not be thus opened, and the theory and practice of rate making upon a systemwide basis invaded and exposed to inimical consequences. The case of State ex rel. City of St. Louis v. Public Service Commission, 362 Mo. 977, 245 S.W.2d 851, which the principal opinion overrules, was, in my opinion, soundly ruled and should be followed. I, therefore, respectfully dissent both to the overruling of this authority and to the holding of the principal opinion which is contrary to it.

EAGER and STORCKMAN, JJ., concur.