IN RE APPLICATION OF NEBRASKA LIMESTONE PRODUCERS ASSOCIATION.
NEBRASKA LIMESTONE PRODUCERS ASSOCIATION, APPELLANT, V. ALL NEBRASKA RAILROADS ET AL., APPELLEES.
97 N. W. 2d 331

Filed June 26, 1959. No. 34554.

*Nelson & Harding,* for appellant.

*J. A. C. Kennedy, R. D. Neely, Guy C. Chambers, G. C. Holdrege,* and *J. W. Weingarten, for appellees.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission denying an application to adjust the rail rates and charges on crushed rock and stone to the same level as those applicable to sand and gravel.

The record discloses that the single-car rates on crushed rock and sand and gravel were about to be fixed at identical rates by agreement of all concerned. The real issue before the commission therefore was whether or not the 10-car rates on crushed rock should be reduced to the lesser 10-car rates on sand and gravel. The applicant contends that the issue is whether or not the 10-car rates on crushed rock and sand and gravel should be placed on a parity by either raising or lowering one or the other to accomplish that result. This difference in the statement of the issues is not a material one in determining the questions raised by the appeal. For the purposes of this opinion we shall refer to the 10-car rates on crushed rock and stone and the 10-car rates on sand and gravel as the "crushed rock" and the "gravel" rates.

The evidence shows that the State of Nebraska is

underlaid with vast deposits of sand and gravel which is suitable for building and road construction purposes. This makes it possible to open sand and gravel pits close to large building and road construction projects and to transport sand and gravel by motor truck to such points. Most of the shippers of sand and gravel by rail are located in the eastern edge of the state. In order that the railroads might meet the competition of these roadside operators of sand and gravel pits, and participate in the transportation of sand and gravel, the commission authorized a 10-car gravel rate in 1939 which was substantially less than the rate on crushed rock.

It is the contention of the shippers of crushed rock that, as a result of the fixing of a lesser rate on gravel than on crushed rock, a greater charge is made against crushed rock producers for a like and contemporaneous service and amounts to an unjust discrimination. It is contended also that it amounts to an undue and unreasonable preference and advantage to gravel shippers as compared to shippers of crushed rock, resulting in unjust discrimination.

The evidence shows that although there are outcroppings of rock in various parts of the state, most of the crushed rock is quarried and shipped from substantially the same area from which sand and gravel are shipped by rail. The evidence indicates that gravel and crushed rock are usually transported at the same rate by the railroads of the country. We think this is true, and unless other factors are present justifying the lesser rate on gravel, the latter would clearly be discriminatory.

The appellant urges that crushed rock and gravel are competitive products and that the reduced rate on gravel has the effect of granting to gravel shippers by rail an economic preference over shippers of crushed rock by rail. The evidence shows that 50 percent or more of the crushed rock shipped by rail is sold to state and federal government agencies for use in the construction of roads and airport facilities. Practically all of

these shipments are pursuant to contracts which specify the composition of the aggregates to be used, including the percentage of each and the grade to be used. In such construction projects crushed rock and gravel are not competitive. When alternatives are provided for the use of crushed rock or gravel, they are competitive products. After a consideration of all the evidence we conclude that crushed rock and gravel are not competitive in most instances but they are competitive in many. This is a factor to be considered in determining the factual situation passed upon in dealing with the application for the adjustment of rates in the instant case.

We conclude from a consideration of all the evidence that there is competent evidence to sustain a finding that a reduced rate on gravel is required to meet competition with motor truck transportation. We conclude also that there is evidence to sustain a finding that crushed rock is to some extent competitive with gravel, and to such extent, the lower rate on gravel discriminates against the use of crushed rock. Whether or not the granting of competitive rates on gravel to permit the railroads to continue in the transportation of gravel and to obtain needed revenue therefrom, or to compel a common rate on gravel and crushed rock to prevent economic preference in favor of gravel shippers to the extent shown, raises an issue which is peculiarly within the province of the commission to decide. Unless an unjust discrimination is shown, or the order of the commission is unreasonable and arbitrary in not being supported by evidence, the courts are without authority to interfere.

The fixing of rates for common carriers by the railway commission is legislative in character. At common law a common carrier was not permitted to charge a different rate to different persons for the identical service under the same conditions. Statutes providing for the fixing of rates to be charged by common carriers are in derogation of the common law. The power to

fix rates to be charged by common carriers is therefore a legislative function which has been lodged in the State Railway Commission subject to the limitations of the Constitution and the statutes of the state. Thus a rate put into effect by the railway commission has the force of a statute on the subject. Farmers Union Livestock Commission v. Union Pacific R. R. Co., 135 Neb. 689, 283 N. W. 498.

There is no contention advanced in this case that the established rates on crushed rock and gravel are unreasonable. The contention is that, unless the rates on these products are on a parity, they constitute a preference and unjust discrimination as defined in the statutes. §§ 75-501 and 75-502, R. R. S. 1943.

Our statutes prohibit unjust discrimination and unreasonable preferences. But all discrimination is not unjust discrimination and all preferences are not unreasonable ones. Some discrimination cannot be avoided. Rates must be adjusted on other considerations than that merely of bringing about economic equality. When competitive conditions are different, different rate levels can often be justified. In the instant case the railway commission had authority to consider the necessity of a competitive rate on gravel to meet motor truck competition to obtain needed revenues for railroads. It also was required to eliminate unjust discrimination and unreasonable preferences. Where there is evidence supporting factors which are inconsistent or in conflict with other recognized factors the power to decide ordinarily rests with the railway commission and not the courts. The railway commission determined the necessity for a competitive rate on gravel and its allied products. It determined what it deemed should be a reasonable rate for crushed rock. It in effect held that any discrimination or preference arising therefrom was not unjust or unreasonable under all the circumstances and conditions shown by the evidence. The evidence sustains the findings of fact made by the commission.

The difference in rates in the area where crushed stone and gravel are competitive amounts to an economic discrimination in that they provide a different rate to different persons for identical service. But we cannot say that the discrimination is an unjust one within the meaning of the statute because of differences in the circumstances and conditions surrounding the two products. It is contemplated that the railway commission should exercise its best judgment in resolving the conflicts between the various factors ordinarily followed in the fixing of rates for common carriers. In Chicago, B. & Q. R. R. Co. v. Herman Bros., Inc., 164 Neb. 247, 82 N. W. 2d 395, we recognized this rule by quoting the following with approval: " 'Although a common carrier is bound to carry at equal rates for all customers in like condition, * * * mere discrimination does not render a rate illegal; only such rates as are unreasonably or unjustly discriminatory are inhibited. In other words, mere inequality of charge does not necessarily constitute undue or unreasonable preference or advantage, and cannot be held illegal unless it is shown that it is not justified by the cost of the respective services, by their values, or other transportation conditions. Further, any fact which produces an inequality of condition and a change of circumstances justifies an inequality of charge, since common carriers are only bound to give the same terms to all persons alike, under the same conditions and circumstances. Accordingly, no claim of illegality can be sustained if, in view of all the circumstances, the discrimination is fair and reasonable, and not inconsistent with the public interest, and, subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, * * *.' "

The evidence shows that the rate on crushed rock is reasonable. It is in substantial accord with crushed

rock rates for shippers in other states and avoids charges of discrimination against interstate rates. The evidence shows that a lower rate on gravel is necessary for railroads to compete with motor truck competition. It shows also that gravel is competitive with crushed rock only to a limited extent. Under the circumstances and conditions shown, there is evidence to support the order of the commission.

It is the established rule in this state that, on appeal to the Supreme Court from an order of the railway commission fixing rates for common carriers, the only questions for determination are whether or not the railway commission acted within the scope of its authority, and whether or not the order made is reasonable and not arbitrarily made. Hooper Telephone Co. v. Nebraska Telephone Co., 96 Neb. 245, 147 N. W. 674; Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756; Chicago, B. & Q. R. R. Co. v. Herman Bros., Inc., *supra.*

Since the record discloses competent and relevant evidence in support of the findings of the railway commission upon the questions of fact presented, and, the order made being within the scope of the powers of the commission and not shown to be arbitrary or unreasonable, this court may not properly substitute its views for that of the commission. An affirmance of the order of the commission is required.

AFFIRMED.