IN RE PRESCRIPTION OF REASONABLE RATES AND CHARGES FOR MOTOR CARRIERS OF PROPERTY FOR HIRE.
L. E. WHITLOCK TRUCK SERVICE, INC., APPELLANT, V. SHIPPERS OIL FIELD TRAFFIC ASSOCIATION, APPELLEE.
105 N. W. 2d 588

Filed October 21, 1960. No. 34808.

*Nelson, Harding & Acklie,* for appellant.

*Robert E. Powell* and *Philip Bolian,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission denying the application of L. E. Whitlock Truck Service, Inc., for an increase in the motor vehicle common carrier rates and charges for the transportation of oil-field equipment, commodities, and supplies in Nebraska intrastate commerce. The primary issue is whether or not the proposed rates and charges were fair and reasonable for the transportation of such commodities in intrastate commerce.

The authority of the commission to prescribe reasonable rates and charges for the transportation of property by common carrier is contained in section 75-241, R. S. Supp., 1959. The record shows that the application was denied after notice was given and a hearing held. It is the contention of the applicant that the order of the commission denying his application is arbitrary, unreasonable, and contrary to law. In this respect it is the rule that where there is evidence supporting factors which are inconsistent or in conflict with other recognized factors, the power to decide ordinarily rests with the commission and not the courts. Under such circumstances this court will not substitute its judgment for that of the commission. Nebraska Limestone Producers Assn. v. All Nebraska Railroads, 168 Neb. 786, 97 N. W. 2d 331; Chicago, B. & Q. R.R. Co. v. Herman Bros., Inc., 164 Neb. 247, 82 N. W. 2d 395. The powers of the commission may not, however, be whimsically exercised. The commission may not disregard undisputed or admitted facts, although it may resolve con-

flicts in the evidence. The exercise of power by the commission without a proper application of the law to undisputed or admitted facts is an arbitrary exercise of power which the courts are required to correct. Chicago & N. W. Ry. Co. v. Save the Trains Assn., 167 Neb. 61, 91 N. W. 2d 312.

Applicant's evidence is substantially as follows: L. E. Whitlock Truck Service, Inc., has assets of $647,260.73. In 1959 the revenue received for all services rendered as a common carrier amounted to $1,238,905.20. The total cost of operation was $1,321,829.26. The loss sustained for the year, including interest and other non-operating expenses, was $103,680.91. The ratio of revenue to expense was 100 to 108.04. This indicates a loss of 8.04 cents on each dollar expended.

Objection was made to an item of expense in the amount of $18,000 for uncollectible revenue. The evidence shows that this was in fact a reserve fund created at the rate of $1,500 a month to apply against uncollectible revenue at the close of the accounting year. No accounting had been had at the time of the hearing and there was no evidence of facts or past experience that would justify the item of $18,000 as an expense. Applicant admits the nature of the item and that it is an improper charge to the extent that it exceeds the amount of uncollectible revenue. Under the circumstances shown in the record the $18,000, or any part thereof, was not established as a proper item of expense. Applicant's claimed loss should be reduced by $18,000, leaving applicant's gross loss at the figure of $85,680.91, according to its own records. The operating loss of the applicant, exclusive of interest on current and equipment obligations less other income amounting to $20,756.85, is $64,924.06.

The record shows that applicant has intrastate authority in Nebraska, Oklahoma, Kansas, Colorado, and South Dakota, and interstate authority between points in Oklahoma, Kansas, Nebraska, South Dakota, North

Dakota, Wyoming, Colorado, and Utah. The evidence shows that in April 1959, applicant sold its intrastate business in Kansas for a substantial sum, reserving its interstate rights and some minor intrastate authority. The amount so received was not included in applicant's balance sheet showing the operational loss hereinbefore indicated. The objector appears to argue that this is a matter to be considered in determining whether or not an increase in rates and charges should be granted. The record also shows that applicant purchased the operating rights and business of a competitor at Sidney, Nebraska, in January 1959. We fail to see where the sale in Kansas and the purchase in Nebraska are material to the issue before the commission, particularly if the more applicable formula to be used is the ratio of revenue to expense as the parties seem to agree.

In relating expense of operation to revenue for the purpose of obtaining a rate increase for a common carrier, an efficient operation of the carrier's business is contemplated. It stands to reason that inefficient management or operation cannot afford a basis for an increase in rates and charges for the transportation of designated commodities by all common carriers transporting the same commodities under the same conditions. Nebraska Limestone Producers Assn. v. All Nebraska Railroads, *supra.*

The objector contends, although no proof was offered by it, that applicant's expense for maintenance and repairs was excessive because of a lack of competence on the part of applicant's truck drivers and drivers' helpers. The applicant admits however that there is merit in this assertion. The evidence shows that applicant had 40-odd trucks domiciled in Nebraska, some of which had a carrying capacity of 36,000 to 38,000 pounds. The evidence further shows that oil drillers and oil producing companies pay a much higher rate of pay to truck drivers and drivers' helpers than applicant can pay under existing rates and charges. This results in

a large turnover in truck drivers and helpers and a reduced efficiency in the operation of his trucks, which bears directly upon the cost of their maintenance. Whitlock testified that if the requested increase in rates and charges were allowed by the commission, a portion of it would be used to raise the rates of pay of drivers and helpers, and to establish a training program for them which would tend to reduce the maintenance costs on this expensive equipment. It is the contention of the applicant that unless a compensatory rate structure is fixed by the commission such costs cannot be assumed and that, as an alternative, it would discontinue the service before losses absorbed the assets of the company. It may be pointed out in this connection that the commission has established no formula for ascertaining the ratio of operating revenue to operating expenses in this type of operation. The amount spent for maintenance by the applicant in 1959 is not questioned. Applicant states that it was abnormally high because of unusual climatic conditions during the early months of 1959. Whitlock testified that the first 4 months of 1959 were the worst with which he had ever contended and that these conditions did bring about abnormal maintenance. He testified that this application for a 10 percent increase in distance rates and the varying percentage of increases and charges for labor and accessories did not take into consideration the additional expenses growing out of the unusual climatic conditions in 1959 and, if they were proper to be included, an increase of rates and charges by 20 percent would be required. While the exhibits offered in evidence appear to include all expenses of the applicant, including the unusual maintenance expense in early 1959, the amount of the increase requested would not cover such additional operational costs and return an adequate compensation to the applicant for the service rendered. We point out that by giving the evidence its most favorable import to the objector, that is, by dis-

allowing the $18,000 uncollectible revenue item as an expense and disregarding interest costs and other income during the year, the operating loss would be $64,924.06. This involves a ratio of revenue to expense of 100 to 105.2.

There appear to be two methods used in calculating whether or not a rate will yield an adequate return. The first method is to provide a reasonable return upon the amount of the investment. The second method is by the operating ratio rule, a ratio of operating revenue to operating expenses. The reasoning for the application of the ratio rule is set out in County Board of Arlington County, Va. v. United States, 101 F. Supp. 328. It is usually applied where revenue and expense is greatly in excess of the capital investment. The railway commission of this state has not adopted a rate-fixing formula for the class of cases we have before us. It is evident from the record that it considered the ratio method in the instant case and the parties apparently are in accord that it affords the proper formula. While we have no established ratio by the commission which can be said to provide for a reasonable rate in such cases, the matter has been before the Interstate Commerce Commission. While the holdings of that body are not necessarily controlling, they may properly be considered under our holding in Preisendorf Transport, Inc. v Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865. In Fares, Motor, Between Northern Kentucky and Cincinnati, 62 M. C. C. 67, an operating ratio of 100 to 92 before income taxes was held to be reasonable. In Transcontinental and Western Increases, 61 M. C. C. 755, a ratio of 100 to 93 was approved as the basis for a reasonable rate. This leads us to the conclusion that under the evidence in this case that was not in dispute, an increase in rates was required and the refusal to increase them was arbitrary. This is necessarily based on the evidence that the relation of operating revenue to operating expense in the ratio

of 100 to 93 will produce a compensatory return.

The objector produced evidence of oil drillers and producers who object to the increased rate application for the reason that it will increase their costs which are already high. These witnesses represent companies which provide approximately 5.06 percent of applicant's intrastate revenue in Nebraska. They admit that applicant should be permitted a rate that would return a reasonable profit. The mere fact that it will increase their costs of operation is not a controlling factor since an increase in transportation rates always increases the cost to users of the service. Some 20 users of the service provided by applicant indicated their support of the application, 2 of them having representatives present to testify. These users of the service provide 64.81 percent of applicant's intrastate revenue in Nebraska. Their evidence may be summarized as follows: Their companies are in business to make a profit and they agree that applicant is likewise entitled to a reasonable profit from its operations. They freely admit that they desire this needed service at as low a rate as they can obtain it. They testify to added considerations. Whitlock testified applicant had 40-odd large trucks. They testify that applicant could "rig down," transport, and "rig up" a 500,000 pound drilling rig in one movement in one day. It requires 15 trucks for such a movement and the applicant usually has them available. The 15 trucks so used had an original cost value of approximately $315,000. The two competitors in the field have less equipment and are not ordinarily in a position to transport the larger oil drilling rigs with the efficiency and dispatch as the applicant. The evidence is that these companies are faced with a $700 daily expense which can be saved in certain instances by using applicant's equipment. In other words, they prefer to support applicant's request for an increase to an abandonment of its service because of the resulting savings to their companies.

Applicant's two competitors, whom we shall refer to as Neff and Gettel, did not appear for or against the application. The objector asserts this is a circumstance for a denial of the increase. The evidence shows that applicant, Neff, and Gettel filed a joint application for a rate increase which was heard by the commission on September 22 to 25, 1959, and denied on October 2, 1959. The evidence shows that applicant invited them to join in the present application but, not hearing from them, concluded to make application on its own. Why neither party called Neff or Gettel to testify is not shown by the record. The inference to be drawn from this, if any proper inference is warranted, is that Neff and Gettel deemed existing rates noncompensatory in view of their previous action in the matter.

It is contended that the requested rates, if granted by the commission, would be discriminatory as to Nebraska interstate users of the service. The evidence shows that the intrastate rates in neighboring states and the interstate rate are for all practical purposes the same as the existing intrastate rates in Nebraska. From this it is argued that a presumption of the reasonableness of the Nebraska rates arises. It is further argued that the Nebraska commission, if it raised the Nebraska rates and charges, would as a matter of law impose a discriminatory rate as to interstate users in Nebraska and intrastate users in neighboring states. We see no merit in this contention. An increase in the rates of a common carrier of intrastate commerce over the interstate rates for the same service is not discriminatory as to interstate users of a similar service. Chicago, Milwaukee, St. Paul & P. R. R. Co. v. State of Illinois, 355 U. S. 300, 78 S. Ct. 304, 2 L. Ed. 2d 292. Such a contention if adopted by the Interstate Commerce Commission and neighboring state regulatory commissions would result in a freezing of established rates and charges from which there could be no escape irrespective of the evidence. Such is not the law. Whitlock testified that applicant is filing or

has filed similar applications before the other commissions but, because the major part of its revenue is derived in Nebraska, it elected to first present its application to the Nebraska commission. We find nothing in the record that limits its right to so proceed.

We hold that a grant of an increase in rates and charges required by the evidence in such a case as we have before us would not be unlawful as being discriminatory. While the existing rates for the same service in other jurisdictions may create a presumption of reasonableness, such a presumption may be overcome by evidence.

A common carrier is bound to carry at equal rates for all customers in like condition and, offtimes what appears to be an economic discrimination is not an unjust discrimination inhibited by sections 75-501 and 75-502, R. R. S. 1943. When competitive conditions are different, different rate levels can be justified without subjecting them to a charge of unjust discrimination. Consequently a state commission may properly fix reasonable rates calculated to return a reasonable profit for the services rendered, even though they exceed established interstate and intrastate rates in other jurisdictions; provided, of course, that the evidence sustains the rate because of the existing circumstances and operating conditions. Chicago, B. & Q. R. R. Co. v. Herman Bros., Inc., *supra;* Nebraska Limestone Producers Assn. v. All Nebraska Railroads, *supra.*

We conclude that the Nebraska State Railway Commission is authorized to prescribe reasonable rates and charges for the transportation of oil-field equipment, commodities, and supplies in Nebraska intrastate commerce. We further conclude that the undisputed evidence in this case, under a proper application of the law, requires that an increase in rates be granted for the performance of the services designated in the application and that the order denying the application is arbitrary and unreasonable. We likewise hold that an order

granting an increase in common carrier rates on specified commodities is not ipso facto discriminatory merely because it exceeds the interstate rate or the intrastate rates of neighboring states.

It is not the province of this court on an appeal from the Nebraska State Railway Commission to fix rates for common carriers. That is the exclusive function of the commission. If an order made by the commission is arbitrary and unreasonable in that it fails to properly apply the law to undisputed evidence the court may properly so declare and set aside such order. The order of the commission denying the applicant relief in the instant case is therefore set aside as arbitrary and unreasonable.

REVERSED.

SIMMONS, C. J., participating on briefs.