KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., A CORPORATION, APPELLANT, v. CITY OF SIDNEY, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

181 N. W. 2d 682

Filed December 4, 1970. No. 37602.

J. Robert Wilson, Duane L. Stromer, James D. Conway, Martin, Mattoon & Matzke, and Wright, Simmons & Hancock, for appellant.

Clinton & McNish, for appellees.

Sidner, Svoboda & Schilke and Loren G. Olsson, for amici curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is an injunction action. Plaintiff sought to increase rates for the sale of natural gas at retail in 108 of 141 Nebraska municipalities. Defendant city refused to grant the proposed raise in rates in its entirety and plaintiff seeks to enjoin the city from preventing plaintiff from putting its proposed increased rates into effect.

Plaintiff produces, purchases, transports, and distributes natural gas in Kansas, Nebraska, Wyoming, and Colorado. In the vicinity of Sidney, there are several

gas wells, a large storage system, and pipelines from Wyoming and Colorado connecting with plaintiff's pipeline system. Owing to these natural advantages, defendants have enjoyed the lowest retail gas rates in Nebraska. Plaintiff seeks to raise defendants' rates to place them on a comparable basis with other Nebraska municipalities. In conformity with the provisions of section 16-679, R. R. S. 1943, plaintiff applied to defendants for an increased rate of approximately 25 percent and received an increase calculated by defendants to be 6.7 percent or equivalent to the desired Nebraska increases if spread equally over all of the 141 Nebraska municipalities served by plaintiff. Plaintiff did not submit to the Sidney city council, nor to the district court, figures establishing a rate base for defendant city, but limited such figures to its Nebraska statewide system.

Evidence of the expert witnesses called to testify in regard to the proper rate base and rate of return is exceedingly conflicting. Plaintiff requested a return of 7.6 percent on a rate base figured at $27,387,028 and defendants granted a 7.45 percent return on $24,765,485.

A municipal corporation in fixing rates to be charged by a public utility acts in a legislative rather than a judicial capacity. See, Kansas-Nebraska Natural Gas Co. v. City of St. Edward, 167 Neb. 15, 91 N. W. 2d 69; City of Scottsbluff v. United Tel. Co. of the West, 171 Neb. 229, 106 N. W. 2d 12. By statute, the Legislature has delegated to municipalities the authority to regulate, determine, and fix rates. This power being legislative in nature, it cannot be assumed by the courts and this court cannot usurp the functions of a rate-making body. Plaintiff contends that if the rate fixed by a rate-making authority is arbitrary, unreasonable, and confiscatory, relief may be had in the courts. With this we agree. A public utility is entitled to rates for its service that may normally be expected to yield a fair return upon the reasonable value of the property that is being used for the public convenience. See Skeedee Independent Tel.

Co. v. Farm Bureau, 166 Neb. 49, 87 N. W. 2d 715. It will be noted that in the present instance, plaintiff has avoided establishing a rate base for the defendant city notwithstanding that the statute confers rate-fixing authority upon each individual municipality. See § 16-679, R. R. S. 1943. Obviously the Legislature did not anticipate that rates should be substantially equal in all Nebraska municipalities as plaintiff now insists they should be. It is entirely possible that a proper rate base may vary from city to city depending upon the extent of plaintiff's investment in its system attributable to such individual cities. So also may its costs of supplying service vary from city to city as where one city is adjacent to a cheap supply of gas and another requires that its supply be transported over a great distance. These factors have been willfully ignored by plaintiff with the result that the record in this case completely fails to demonstrate that the rate fixed by the city of Sidney and approved by the trial court is arbitrary, unreasonable, or confiscatory.

Even when considered on a statewide rate basis such as plaintiff pursued, the evidence fails to convince us that defendants have acted unlawfully. Electric and gas rates fixed by a city for a utility company are presumed to be correct and reasonable and the burden is on the utility company to show that they are clearly, palpably, and grossly unreasonable. See, Iowa-Illinois Gas & Elec. Co. v. City of Iowa City, 255 Iowa 1341, 124 N. W. 2d 840; City of Wink v. Wink Gas Co. (Tex. Civ. App.), 115 S. W. 2d 973. In Pell v. City of Marshalltown, 241 Iowa 106, 40 N. W. 2d 53, the court, calling attention to the legislative nature of the rate-fixing power, stated: "As a general rule, the acts of a municipal corporation which are within its power are not subject to judicial review unless there is a manifest and palpable abuse of power, and it is well-established that the motives of the council acting in its legislative capacity cannot be inquired into. * * * In the present case,

in exercising a power expressly authorized by statute the council has a discretion, and so far as it does not act oppressively or unreasonably under that power courts are powerless to interfere with that discretion." City of Wink v. Wink Gas Co., *supra,* in dealing with city-fixed gas regulations, states: "The ordinance is presumed to be reasonable. One attacking it has the burden of proving that it is unreasonable. * * * If there is a reasonable doubt as to its reasonableness, the ordinance must be sustained. If the question of reasonableness is seriously debatable, the opinion of the City Commission, not that of the courts, must prevail." Where, on appeal from an action in equity, credible evidence on material questions of fact is in irreconcilable conflict, the Supreme Court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the other. See State v. Merritt Brothers Sand & Gravel Co., 180 Neb. 660, 144 N. W. 2d 180.

Plaintiff urges that section 16-679, R. R. S. 1943, is unconstitutional. This question we do not determine. Plaintiff sought a raise in gas rates from the defendant city pursuant to the provisions of this statute. Being unsatisfied with the result obtained, it brought this action to enforce the rates it desired and alleged in its petition that defendants had jurisdiction over the rates by virtue of the statute. It cannot now be heard to question the constitutionality of the statute. "A litigant who invokes the provisions of a statute may not challenge its validity. He may not seek the benefit of it and at the same time question its constitutionality." Shields v. City of Kearney, 179 Neb. 49, 136 N. W. 2d 174.

No error appearing, the judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH and McCOWN, JJ., dissenting.

The plaintiff attempted to raise the issue of the ap-

plicability and constitutionality of section 16-679, R. R. S. 1943, in both the district court and in this court. The opinion of the majority holds that section 16-679, R. R. S. 1943, is applicable and that the plaintiff is estopped from questioning the validity of the statute in this action.

The plaintiff is an integrated public utility providing natural gas service to wholesale and retail customers in four states. In Nebraska the plaintiff serves 52,926 retail customers within the boundaries of 141 separate municipalities, and 11,513 rural retail customers.

Section 16-679, R. R. S. 1943, enacted in 1901, authorizes the mayor and council in cities of the first class to regulate and fix the rates for gas supplied by an individual or private corporation "operating such works or plants." The reference is to manufactured gas produced from oil or coal or both in a gas works located in the city.

Natural gas is produced from underground sources and transmitted by pipeline to distribution centers. Manufactured gas is produced by local plants or works at the distribution center and is not transmitted through long-distance pipelines. Natural gas was not used in Nebraska before 1930.

In considering a similar statute, the Supreme Court of Colorado, in Citizens Utilities Co. v. City of Rocky Ford, 132 Colo. 427, 289 P. 2d 165, said: "The meaning of this statute when construed in the light of subsequent events, must be discovered by giving consideration to the language of the statute as it was understood at the time of its enactment. No new meaning can be given thereto because of changed conditions. This statute cannot be construed as broad enough to include a natural gas distribution system. The very wording of the statute when applied to conditions existing at the time of its passage, if defendants' contention be considered at all, certainly provokes a doubt, to say the least, as to the meaning of 'gasworks,' and invoking the well-settled rule, if a doubt exists as to the power of a

municipality to create or acquire a natural gas distribution system under this statute, then such doubt is resolved against the municipality. Since municipal corporations are creatures of statute, they are confined to the powers specifically granted thereby. Notice is to be given to the fact that in 1899 distribution of natural gas was unknown. Such gas as was available for use at that time was artificial gas, manufactured in what may be termed a 'gasworks,' and distributed by its particular system, and it follows that a word used in the statute of that date does not include everything to which that word may be applied at the present time. At that time the legislature could not have contemplated that municipalities in the state of Colorado would, at the present time, be using natural gas, and therefore the word it employed at that time could have referred only to artificial or manufactured gas." See, also, Application of Village of Walthill, 125 F. Supp. 859, holding that a gas plant or gas works is an establishment where gas is manufactured.

We think that the proper interpretation of section 16-679, R. R. S. 1943, is that it has no application to an integrated natural gas distribution system such as that operated by the plaintiff, and that the Legislature has not delegated the power to regulate this type of utility.

This action was brought by the plaintiff to enjoin the defendant city from preventing the plaintiff from putting its proposed rates into effect. It was not a continuation of the proceeding before the city council of the defendant city or a form of direct review of the action of the city council. The rule upon which the majority relies refers to an attempt to challenge the validity of a statute in the same action in which the benefit of the statute is claimed.

In Shields v. City of Kearney, 179 Neb. 49, 136 N. W. 2d 174, the plaintiffs "appealed" to the district court "from the enactment of the ordinance" and then attempted to challenge the validity of the statute which

purported to authorize the "appeal." They had invoked the benefit of the statute to obtain a determination that the action of the city was not authorized. We think the better rule is that the plaintiff is not estopped in this action from questioning the applicability or constitutionality of section 16-679, R. R. S. 1943.

In Abie State Bank v. Weaver, 119 Neb. 153, 227 N. W. 922, this court held that since the plaintiff had accepted benefits arising from the Bank Depositors' Guaranty Law, it was estopped to question the validity of an assessment made under the law. In holding that the plaintiff was not estopped, the United States Supreme Court, in Abie State Bank v. Bryan, 282 U. S. 765, 51 S. Ct. 252, 75 L. Ed. 690, said: "The banks were not bound for all time, regardless of consequences."

We think it is clear that the regulation of the rates of an integrated utility, such as the plaintiff, is not a matter of local concern, but is a matter of statewide concern. It is a power which was not delegated by the Legislature under the statute passed in 1901.